UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| ELIZABETH PACKARD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3: 09-38-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| FUQING YONGCHAO SHOES | ) | **MEMORANDUM OPINION** |
| LEATHER GOODS CO., LTD., et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Plaintiff Elizabeth Packard sued Wal-Mart Stores East, L.P., and Fuqing Yongchao Shoes Leather Goods Co., Ltd., for products liability, breach of implied warranty of fitness, and negligence.[1] [Record No. 1, pp. 4-8] The claims arise out of injuries Packard suffered as a result of an alleged defect in a product manufactured by Fuqing Yongchao and sold by Wal-Mart, "Sand-N-Sun" brand flip-flops. [*See id.*, p. 4 ¶¶ 11-14] According to Packard, after wearing the flip-flops "for a short period of time," she "developed severe chemical burns on both feet." [*Id.* ¶ 14] Packard sought compensatory damages from Wal-Mart and Fuqing Yongchao for "physical pain and suffering, permanent disfigurement, mental pain and suffering, past and future medical expenses, and past and future loss of income." [*Id.*, pp. 5 ¶ 20, 7 ¶ 29, 8 ¶ 33] She also sought punitive damages. [*See id.*, p. 9]

---

1   Packard also asserted a claim of insurance bad faith against Claims Management, Inc. [*See* Record No. 1, pp. 8-9] That claim was settled at the time of Packard's settlement with Wal-Mart. [*See* Record Nos. 35-36, 38]

Fuqing Yongchao failed to answer or otherwise defend. Following entry of default by the clerk in May 2010 [Record No. 16], the Court granted Packard's motion for default judgment, leaving determination of damages for a later date. [Record No. 18] Packard settled her claims against Wal-Mart in April 2011. [*See* Record Nos. 35-38] On July 12, 2011, the Court held an evidentiary hearing, pursuant to Rule 55(b)(2)(B) of the Federal Rules of Civil Procedure, to determine the amount of damages Packard is entitled to recover from Fuqing Yongchao. [*See* Record Nos. 42, 44]

Packard was the only witness who testified during the July 12th hearing. She testified that she purchased the Sand-N-Sun flip-flops at the Shelbyville Wal-Mart sometime in August 2007 for one dollar. She recalled that she first wore the shoes more than a year later, the day after Labor Day in 2008. According to Packard, within a few hours of putting on the flip-flops, her feet began to itch and burn. That evening, she went to an immediate-care center in Shelbyville, Max Care Urgent Treatment Center, where she was diagnosed with contact dermatitis and prescribed hydrocodone tablets and a topical cortisone cream. She filled the prescriptions at Walgreens that evening. The total cost for the two prescriptions was $36.51.[2] The visit to the immediate-care center cost $126.00.

Photographs admitted into evidence at the hearing depict what appear to be chemical burns on the tops of Packard's feet. The first photo, which Packard testified was taken after she

---

2  Exhibits introduced by Packard at the hearing show that the cost of the prescriptions was covered by Medicare. Under Kentucky law, Packard may recover the costs of medical services for her injury even though she did not pay them out of her own pocket. *See Baptist Healthcare Sys. v. Miller*, 177 S.W.3d 676, 682-83 (Ky. 2005) (explaining that the collateral source rule, which is followed by Kentucky courts, "allows the plaintiff to . . . seek recovery for the reasonable value of medical services for an injury . . . without consideration of insurance payments made to the injured party" and that "Medicare benefits are governed by the collateral source rule and are treated the same as other types of medical insurance").

returned from the immediate-care center on September 2, 2008, shows inflamed areas on each foot where the straps of the flip-flops would have rested. [Pl.'s Ex. 2] By the following day, blisters had developed in those areas. [Pl.'s Ex. 3] In the final two photos, the blisters appear to have burst. [Pl.'s Exs. 4-5] Packard testified that after the blisters burst, she could not let anything touch her feet — even water in the shower — because the burns were so painful. She stated that she had open sores on the tops of her feet for about a month before they scabbed over. During that month, she twice sought treatment for the burns at Lexington Foot and Ankle Center. However, Packard testified that she was never billed for those visits, nor was a claim submitted to Medicare.

Packard did not seek further medical treatment for the burns. However, she testified that until July 2010, she continued to periodically experience "flare-ups" of the burned areas, which she treated at home with Neosporin ointment or an equivalent over-the-counter medication. In response to the Court's follow-up questions, she roughly estimated that she had suffered twelve such episodes over the period from fall 2008 to July 2010.

The remainder of Packard's testimony and documentary evidence concerning her alleged injuries pertained to "severe spasms" in her calf muscles, which she began to experience in fall 2009. Medical bills introduced into evidence at the hearing show that Packard sought extensive treatment for the muscle spasms, incurring charges of more than $17,000 for various procedures and prescriptions. [Pl.'s Exs. 7-8] The Court need not take these charges into account, however, because Packard's Complaint contains no mention whatsoever of muscle spasms. [*See* Record No. 1] Rather, the sole injury alleged is chemical burns to her feet. [*See id.*, p. 4 ¶¶ 14, 16; *id.*,

p. 8 ¶ 33] Further, there is no competent evidence before the Court to establish that muscle spasms are in any way causally related to the injuries to Packard's feet.

The Court likewise will not consider any claim for permanent disfigurement, as Packard presented no evidence to support such a claim.[3] Nor was there sufficient evidence that Packard experienced any significant mental pain and suffering as a result of the chemical burns to her feet.[4] Furthermore, nothing in Packard's testimony suggested that she is likely to incur any future medical expenses in connection with the burns. Finally, no evidence was presented to support Packard's claim for damages to compensate for past and future loss of income. And the Court does not find that Packard suffered any loss of earning capacity as a result of the injuries to her feet. Therefore, the Court's analysis of compensatory damages will be limited to the issues of physical pain and suffering and past medical expenses.

### A. Compensatory Damages

No specific damage amount was set forth in the Complaint. [*See* Record No. 1] In her prayer for relief, Packard asked the Court to find Wal-Mart and Fuqing Yongchao jointly and severally liable for her damages. [*See id.*, p. 9 ¶ 1] However, joint and several liability for torts has been replaced in Kentucky by the doctrine of comparative fault. *See* Ky. Rev. Stat. (KRS) § 411.182; *Ky. Farm Bureau Mut. Ins. Co. v. Ryan*, 177 S.W.3d 797, 802 (Ky. 2005) (observing that KRS § 411.182 "represent[s] the legislature's intent to eliminate, once and for all, joint and

---

3     In fact, Packard testified that she no longer has any scarring or even discoloration from the burns.

4     Packard testified only that she suffered from anxiety already and that the burns "exacerbated" her anxiety problem. The Court does not accept this testimony as sufficiently credible to support Packard's claims.

several liability"). Section 411.182 of the KRS sets forth the procedure for allocation of fault. That section provides:

> In all tort actions, including products liability actions,[5] involving fault of more than one (1) party to the action, including third-party defendants and persons who have been released under subsection (4) of this section, the court, unless otherwise agreed by all parties, . . . shall make findings indicating:
>
> (a) The amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and
>
> (b) The percentage of the total fault of all the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under subsection (4) of this section.

KRS § 411.182(1). When allocating fault among the parties, the Court is to "consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed." KRS § 411.182(2).

Once the Court has determined the parties' respective percentages of fault, it must apply those percentages to the total damage amount to find each party's proportionate share. KRS § 411.182(3). The statute specifically addresses the effect of a settlement on the calculation of damages. Subsection (4) explains:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable, shall discharge that person from all liability for contribution, but it shall not be considered to discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against the other persons shall be reduced by the amount of the released persons' [sic]

---

5   Each of Packard's claims against Wal-Mart and Fuqing Yongchao is a products liability action under Kentucky law and thus is subject to the apportionment rules set forth in § 411.182. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 518-19 (6th Cir. 1998) (citing *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997))).

equitable share of the obligation, determined in accordance with the provisions of this section.

KRS § 411.182(4). Thus, while the amount of a settlement does not apply as a direct credit such that a nonsettling party would be required to make up the difference between the settlement amount and the total damages, the settlement is nonetheless taken into account; a party that has settled is deemed to have satisfied its share of the obligation. *See id.*

The procedure for calculating Packard's compensatory damages, then, is as follows. First, the Court must determine, based on the evidence presented, the total amount of damages Packard has suffered. *See* KRS § 411.182(1)(a). The Court must next assess the percentage of fault attributable to each party (including Packard), *see* KRS § 411.182(1)(b), and then apply those percentages to the total damage amount to calculate each party's proportionate share of the damages. *See* KRS § 411.182(3). Finally, the Court must subtract Wal-Mart's proportionate share from the total. *See* KRS § 411.182(4). The remaining amount is the sum for which Fuqing Yongchao is liable.

    **1. Total Damages**

As noted above, the evidence presented to the Court during the July 12th hearing sufficiently established that Packard incurred medical expenses of $162.51 ($36.51 for prescriptions at Walgreens and $126.00 for the visit to Max Care) related to her chemical burns. She is entitled to recover those costs. The Court further finds that Packard is entitled to damages of $1,000 for physical pain and suffering during the first month, as well as $500 for each of the twelve "flare-ups" she experienced over the next two years. Packard's total damages, then, are

$7,162.51 ($162.51 in past medical expenses and $7,000 for pain and suffering). Fuqing Yongchao is not liable for this entire amount, however. *See* KRS § 411.182.

### 2. Apportionment

It does not appear that Packard was in any way to blame for her injuries; therefore, no fault will be apportioned to her. While there was little evidence presented at the hearing to assist in allocating fault, it appears to the Court, and Packard's counsel agreed, that the two defendants were equally to blame for her injuries: Fuqing Yongchao manufactured the defective product, while Wal-Mart made it available for purchase. *See* KRS § 411.182(2). Thus, each defendant's proportionate share of the damages is $3,581.26, *i.e.*, fifty percent of the total. This is the amount of compensatory damages Packard is entitled to recover from Fuqing Yongchao. *See* KRS § 411.182(4).

### B. Punitive Damages

Packard also seeks punitive damages against Fuqing Yongchao with respect to Count II of the Complaint (breach of implied warranty of fitness). [*See* Record No. 1, p. 9] She alleges that she is entitled to punitive damages "on the grounds that the Defendants acted maliciously or in reckless disregard for the consequences by continuing to sell the 'Sand-N-Sun' brand flip-flop style shoes after receiving notice of their defective condition." [*Id.*, p. 7] Packard has fallen far short of the requisite evidentiary showing to support such an award, however.

Punitive damages are governed in Kentucky by KRS § 411.184, which provides that "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward the plaintiff with

oppression, fraud or malice." KRS § 411.184(2); *see* (5) ("This statute is applicable to all cases in which punitive damages are sought . . . ."). As noted above, Packard alleges that Fuqing Yongchao "acted maliciously." [Record No. 1, p. 7 ¶ 30; *see id.*, p. 9 (seeking punitive damages based on the defendants' "previous knowledge, recklessness, and malice")] The statute defines "malice" as:

> either conduct which is specifically intended by the defendant to cause tangible or intangible injury to the plaintiff or conduct that is carried out by the defendant both with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in human death or bodily harm.

KRS § 411.184(1)(c). The Kentucky Supreme Court has further explained the term: "Malice . . . may be characterized as intentionally cruel and unjust or intentionally injurious behavior. It 'may be implied from outrageous conduct, and need not be expressed so long as the conduct is sufficient to evidence conscious wrongdoing.'" *Bowling Green Mun. Utils. v. Atmos Energy Corp.*, 989 S.W.2d 577, 580-81 (Ky. 1999) (quoting *Fowler v. Mantooth*, 683 S.W.2d 250, 252 (Ky. 1984)). Because it would be virtually impossible for Packard to show that Fuqing Yongchao specifically intended to injure her or other consumers, the relevant inquiry is whether the company acted with "flagrant indifference" to Packard's rights and was subjectively aware that its actions would cause death or bodily harm. KRS § 411.184(1)(c).

In the *Bowling Green* case, the Kentucky Supreme Court found the evidence regarding the defendant's conduct to "fall[] far short of showing 'flagrant indifference' to the plaintiffs" where there was no indication that the defendant had "willfully disregarded its duty" to repair or replace a damaged gas main that ultimately exploded, injuring the plaintiffs. 989 S.W.2d at 581. Nor did the court find the necessary "'subjective awareness'" that the plaintiffs would be

harmed, as there was no evidence that the defendant even knew the pipe was damaged. *Id.* (quoting KRS § 411.184(1)(c)). Consequently, the court held, the plaintiffs were not entitled to punitive damages. *See id.*

Here, Packard alleges that punitive damages are appropriate because Fuqing Yongchao had notice prior to August 2007 that the flip-flops were defective. [*See* Record No. 1, p. 7 ¶ 30] As evidence, she presented four consumer complaints that she received from the U.S. Consumer Product Safety Commission in response to a Freedom of Information Act request. [Pl.'s Ex. 6] At most, these documents indicate that Fuqing Yongchao may have had notice of a possible defect in the flip-flops at some point in the fall of 2007. However, the earliest of the four complaints is dated August 30 of that year, which does not support Packard's claim that the company knew of the defect before she purchased the product.

Moreover, it is not enough to show that Fuqing Yongchao *might* have been aware that its product *might* be defective. Instead, Packard must demonstrate — "by clear and convincing evidence" — that the company knew the Sand-N-Sun flip-flops would seriously harm consumers but nevertheless continued to distribute them. KRS § 411.184(2); *see* (4). Absent such clear and convincing evidence of "conscious wrongdoing," Packard's claim for punitive damages must fail. *Bowling Green Mun. Utils.*, 989 S.W.2d at 581.

### C. Conclusion

Packard has shown that she is entitled to damages from Fuqing Yongchao in the sum of $3,581.26 to compensate her for physical pain and suffering and past medical expenses. She has

not established that Fuqing Yongchao is liable for punitive damages, however. A final default judgment will be entered this date consistent with the Court's findings herein.

This 14th day of July, 2011.

Signed By:
*Danny C. Reeves* DCR
United States District Judge